NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2513

JACQUELINE ADDIS,

v.

THE LIMITED LONG-TERM DISABILITY PROGRAM,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 05-cv-00357)
District Judge: Honorable Timothy J. Savage

Argued January 7, 2008

Before: SCIRICA, Chief Judge, AMBRO, and JORDAN, Circuit Judges

(Opinion filed: March 13, 2008)

Matthew D. Besser, Esquire
David A. Campbell, Esquire (Argued)
Michael J. Settineri, Esquire
Vorys, Sater, Seymour & Pease
1375 East Ninth Street
2100 One Cleveland Center
Cleveland, OH 44114-1724

    Counsel for Appellant

Allan D. Goulding, Jr., Esquire (Argued)
Curtin & Heefner
250 North Pennsylvania Avenue

Morrisville, PA 19067

    Counsel for Appellee

## OPINION

AMBRO, <u>Circuit Judge</u>

    Jacqueline Addis, now 35 years old, applied for long-term disability benefits under a plan subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1191c. The plan administrator, on behalf of defendant-appellant The Limited Long-Term Disability Program ("LLDP"), denied her claim. The District Court reversed that decision and awarded benefits. We affirm.

### I. Facts and Procedural History

    Addis began working as a manager for Victoria's Secret Stores, owned by The Limited, Inc., in 1997. Her duties included serving customers, managing payroll, monitoring inventory, and performing certain physical tasks, such as moving floor fixtures. After experiencing various symptoms, she began undergoing testing for multiple sclerosis in 1998 and received a diagnosis of MS by November 2000. According to Dr. Gabriel Tatarian, her treating neurologist, Addis's persistent symptoms included "difficulty walking, fatigue, poor concentration, difficulty with memory, bowel and bladder incontinence, visual symptoms including [sensitivity to] bright lights[,] and poor facial perception." Her more occasional symptoms include confusion, muscle spasms,

tingling sensations in her limbs, headaches, rashes, and losses of balance resulting in falls.

Addis stopped coming to work and applied for benefits on January 5, 2003.[1] MetLife, the claims administrator for LLDP (an ERISA plan funded by The Limited), approved her claim for a provisional two-month period until March 6, 2003.  On March 11, 2003 (five days after the provisional deadline), Addis submitted documentation to support her continued inability to work, including notes from Dr. Tatarian and MRI results prepared by Dr. Norbertina Banson.  After review by an "independent physician consultant," MetLife rejected Addis's claim and terminated her benefits.  MetLife found that her condition was not worsening and relied on Dr. Tatarian's statement that she could return to work once she determined herself to be medically fit.  In mid-April 2003, Addis returned to work on a limited basis of twenty hours a week for "light duty," but she stopped again after less than two months.

Meanwhile, Addis appealed MetLife's denial of benefits, submitting documentation of her continuing regular exams with Dr. Tatarian.  A nurse consultant for MetLife performed a second review of her case, after which MetLife denied the appeal. It argued that Addis's condition had not increased in severity since her initial claim and that she had submitted no additional clinical information.  The information Addis

---

[1] To qualify for long-term benefits, a participant must demonstrate a "Total Disability" as defined under the plan.  For the first twelve months of illness or injury, the participant must demonstrate that she can no longer perform her "regular occupation"; thereafter, the participant must show that she "cannot work at any gainful occupation" for which she is "reasonably qualified, or could become qualified, by education, experience or training."

submitted previously led to a denial of benefits. Therefore, MetLife concluded, without more clinical information it was compelled to deny her appeal as well.

Addis requested reconsideration. More medical documentation accompanied her request, including: (1) a longer history of her quarterly visits to Dr. Tatarian; (2) a summary letter from Dr. Tatarian referring to "times of progressive symptoms" and "various exacerbations" and recommending that she cease working; (3) past MRI results; (4) notes from her chiropractor, Dr. Ana Lavdas, reporting various symptoms over the course of two years; (5) her chemical and drug treatment records; and (6) notes from Dr. Nancy McCarel, a psychologist Addis consulted for a three-month period. Eventually, after she retained new counsel, MetLife agreed to reconsider her appeal. Addis then added three more pieces of evidence: (7) a new exam report from Dr. Tatarian, indicating "no neurologic problems" but also noting tremors and fatigue; (8) part of her successful application for Social Security disability benefits, which were dated back to January 2003; and (9) a more recent MRI from December 2003, showing three or four brain lesions.

Despite these nine additional categories of documents, MetLife again denied benefits. A nurse consultant as well as an independent physician consultant, Dr. Gary Greenhood, reviewed the new body of evidence, but they did not examine Addis. Dr. Greenhood concluded that he was "unable to confirm that there was an exacerbation of multiple sclerosis during the interval in question" and found that Addis could work with

some restrictions. MetLife's case manager, Tammi Phillips, acknowledged Addis's diagnosis of MS but stated that "the MRI of your cervical spine dated January 4, 2003 showed no evidence of multiple sclerosis." Phillips mischaracterized a finding of "increased tone" in Addis's legs as a positive development.[2] She listed every "normal" finding in the record, such as evaluations of Addis's mental-health status. But Phillips did not explain why these non-findings outweighed the abnormal findings or the ailments Addis consistently reported to multiple doctors.

Addis next sued MetLife in the United States District Court for the Eastern District of Pennsylvania to recover benefits under 29 U.S.C. § 1132(a)(1)(B). As MetLife only administers the Plan, LLDP, as the insurer, is the proper defendant. In June 2005 Addis amended her complaint to substitute LLDP as the defendant.[3]

The District Court reversed the denial of benefits, granting Addis's motion for summary judgment. Finding procedural irregularities in MetLife's handling of Addis's claim, the District Court applied a moderately heightened standard of review. The District Court found MetLife's assessment of the evidence to be selective and its denial of

---

[2] In this context, increased muscle tone refers to a symptom of MS. *See, e.g.*, Jane Johnson & Bernadette Porter, *Strategies and Challenges in Managing Spasticity*, *in* Advanced Concepts in Multiple Sclerosis Nursing Care 117, 118–19 (June Halper ed., 2007).

[3] Addis alleges that MetLife was unaware that it did not fund the plan, since it engaged in litigation for five months before pointing out that it was not the proper defendant. But LLDP argues that the plan documents made the Plan's funding source clear. *See infra* Part II.

Addis's benefits to be improper. In light of these procedural irregularities and the evidence regarding Addis's condition, the District Court awarded long-term benefits to Addis directly, *i.e.* without remand to the claims administrator.[4] LLDP appeals to our Court.

## II. Standard of Review

In ERISA cases brought under § 1132(a)(1)(B),[5] the standard of review depends on the level of discretion given to the claims administrator. Here, the plan states that "[t]he Claims Administrator shall have discretionary authority." Absent any question of a conflict of interest for the administrator, we would review for abuse of discretion. But, in the presence of an alleged conflict and alleged procedural irregularities, we must assess where on a sliding scale our standard of review should lie, "grant[ing] the administrator deference in accordance with the level of conflict." *Post v. Hartford Ins. Co.*, 501 F.3d 154, 161 (3d Cir. 2007). We explained the sliding-scale analysis as follows:

> To apply the approach, courts first consider the evidence that the administrator acted from an improper motive and heighten their level of scrutiny appropriately. Second, they review the merits of the decision and the evidence of impropriety together to determine whether the administrator properly exercised the discretion accorded it. If so, its decision stands; if not, the court steps into the shoes of the administrator and rules on the merits itself.

---

[4] The District Court awarded benefits under both the "regular occupation" and "any gainful occupation" standards. *See supra* note 1.

[5] The District Court had jurisdiction under 29 U.S.C. § 1132(e)(1). We have jurisdiction over this appeal under 28 U.S.C. § 1291.

> At its best, the sliding scale reduces to making a common-sense decision based on the evidence whether the administrator appropriately exercised its discretion. This theme, rather than getting bogged down in trying to find the perfect point on the sliding scale, should be district courts' touchstone.

*Id.* at 161–62 (citations omitted). We further explained that structural factors—*i.e.*, whether the administrator has "financial incentives to act against the participants' interest"—and procedural factors—*e.g.*, selectivity in reviewing the evidence—both can come into play. *Id.* at 162.

In our case, Addis alleges that MetLife (mistakenly) thought that it funded the plan, rather than the Limited. "Although MetLife did not, in fact, have a conflict of interest at the time it rendered its decision, it *believed* that it did." Addis's Opening Br. 16 (emphasis added). But one must engage in behavioral-economic speculation to argue that perceived rather than actual incentives determine claims administrators' behavior. Our Court has only recognized conflicts of interest "when the administrator *has* a non-trivial financial incentive to act against the interests of the beneficiaries." *Id.* at 162 (emphasis added). Thus, in this case we decline to treat a perceived financial conflict like an actual one. That issue is reserved for another day.

The kind of procedural irregularities that have led our Court to apply a heightened standard of review include, but are not limited to: "(1) reversal of position without additional medical evidence; (2) self-serving selectivity in the use and interpretation of physicians' reports; (3) disregarding staff recommendations that benefits be awarded; and

(4) requesting a medical examination when all of the evidence indicates disability." *Id.* at 164–65 (citations omitted). The degree to which we raise the standard of review depends on our level of doubt regarding the claims administrator's neutrality that the irregularities create. For example, where we have seen "non-trivial evidence of procedural bias" that was "neither egregious nor coupled with evidence of structural bias, we heightened our scrutiny only a moderate amount." *Id.* at 165 (citing *Kosiba v. Merck & Co.*, 384 F.3d 58, 68 (3d Cir. 2004)).

The District Court found in this case that no one familiar with MS reviewed Addis's case. MetLife's case managers are not physicians. MetLife's independent physician consultant, Dr. Greenhood, is an expert in infectious diseases. Typically, experts in neurology treat MS patients, since the disease attacks the central nervous system.[6] The District Court faulted Dr. Greenhood's writing style as willfully vague and cited phrases in his report that cast unwarranted aspersions on Addis's MS diagnosis. The Court found MetLife's reading of the evidence to be selective, taking positive comments out of context and ignoring—or even misunderstanding—negative diagnoses. It is true MetLife had no duty to defer to Addis's treating physicians in the context of ERISA (as opposed to Social Security). *See Black & Decker Disability Plan v. Nord*, 538

---

[6] Many scientists do suspect that viruses play a role in the onset of MS. But the discovery of a specific viral cause or the precise relationship between viruses and the development of the disease remains at the research frontier. *See, e.g.*, "Research Reports on Multiple Sclerosis from B. Serafini and Colleagues Provide New Insights," Biotech L. Wkly., Mar. 7, 2008, at 3545.

U.S. 822, 829–30 (2003). But, as the District Court found, MetLife provided no justification for failing to mention the opinion of Dr. Lavdas (Addis's treating chiropractor) or for giving more weight to the views of its own consultant than to Dr. Tatarian (Addis's treating physician). Finally, the District Court was right to criticize MetLife for failing to consider more than a six-month window of evidence (starting from the time Addis stopped working). There is no reason and no language in the plan that required or authorized MetLife to limit the scope of its inquiry in that way.

In light of these procedural flaws, the District Court chose to apply the moderately heightened standard of review.[7] We agree that MetLife's decision involved a procedural irregularity, specifically a "self-serving selectivity in the use and interpretation of physicians' reports." *Post*, 501 F.3d at 165.[8] The MetLife's case managers' letters, along with Dr. Greenhood's report, support the District Court's criticisms along the lines of selectivity and questionable interpretation. Moreover, the flaws that the District Court identified qualify as "serious, numerous, or regular," given the length of the list of problems. *Id.* As a result, the District Court was correct to apply the moderately heightened standard of review.

---

[7] The District Court noted, however, that either a moderately heightened standard of review or a normal abuse-of-discretion standard would yield the same result.

[8] Another indicator of procedural irregularity mentioned in *Post*—"reversal of position without additional medical evidence"—does not appear to apply here. 501 F.3d at 164–65. MetLife's initial two-month award of disability benefits to Addis was provisional and not based on a review of the evidence. Thus, MetLife did not change its position on the evidence.

### III. Merits

In this context, we affirm the District Court's holding that MetLife abused its discretion by denying Addis's benefits. LLDP argues that many pieces of evidence suggest that Addis's condition was not getting worse. But, as the District Court pointed out, those pieces of evidence required a selective reading, and occasional 180-degree misreading, of the medical record. Instead, everything in the medical record suggests that Addis suffered from various symptoms of MS, and that some of her symptoms had worsened. Moreover, the evidence that Addis returned to work for less than two months—after MetLife denied her benefits—is not enough to undercut her claims of disability. The denial of benefits itself spurred her to work. And it seems convincing that she could not continue working after a few weeks of trying, because her decision not to work caused her financial harm and uncertainty. She was not receiving benefits of any kind at that time; it would be another year until she was awarded Social Security benefits.

Finally, LLDP's argument that the nurse consultant's and independent physician consultant's reports provide substantial evidence for MetLife's decision is unconvincing. For example, the nurse consultant's report, after noting the bulging disc in Addis's spine, immediately concludes: "Therefore medical provided does not support a limit of function from the time period of 1/5/03 to 7/5/03." The nurse consultant failed to address why the bulging disc was or was not a problem, or why it was outweighed by other evidence. The independent physician consultant used dodgy language—*e.g.*, "unable to confirm,"

"unable to substantiate"—in the face of an administrative record that had grown quite large by the end of MetLife's second review on appeal. LLDP points out that MetLife was under no affirmative duty to pursue an independent medical opinion. *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 394 (3d Cir. 2000). But that does not imply that Dr. Greenhood's review of evidence was sufficient to deny Addis's claim, or that other evidence existed to support such a decision. The bottom line is that we see no reason to disturb the District Court's well-reasoned conclusion that MetLife improperly used its discretion by denying benefits.

## IV. Remedy

LLDP argues that it would be unprecedented for the District Court to rule on Addis's "any occupation" benefits, because the claims administrator did not have a chance to rule on those benefits first. But the District Court pointed out that the six-month period that MetLife chose to review was arbitrary. In light of the procedural irregularities discussed above, it was legitimate for the District Court to "step[] into the shoes of the administrator and rule[] on the merits itself." *Post*, 501 F.3d at 162.

\* \* \* \* \*

We affirm the District Court's judgment in all respects.